## In the United States District court
## Southern district of New York

Emmanuel Obiagwu.

      Plaintiff

V.

Atif Chohan (in his individual and official capacity)
Kaisean Branche (in his individual & official capacity),
Amanda Ebrahim (in his individual and official capacity),
Andrew Yoli (in his individual and official capacity)
Mohammad Khan (in his individual and official capacity)
Vadym Khalos (in his individual and official capacity)
Garret Williams (in his individual and official capacity)
John Doe (in his individual and official capacity)
City of New York, New York Police Department.

      Defendants.

**Complaint**
**JURY TRIAL DEMANDED**

### COMPLAINT

### <u>JURY</u>
Plaintiff demands a trial by jury

### <u>INTRODUCTION</u>

1. All claims brought against the New York Police Department and its officers are also brought against the City of New York. Starting from late 2024 till date Plaintiff has been a target of police harassment, targeting and racial discrimination in TimesSquare area. Plaintiff has been targeted by officers at the request of a white family owned business who deem him as a photography competitor. Plaintiff have had the NYPD approach him numerous times in response to calls made by this Family against plaintiff with over 7 officers responding each

time even though the 911 calls are meritless. Plaintiff and his associates have been arrested or issued tickets numerous times at the command of this Family. Plaintiff have been documenting the history of the harassment from NYPD and unfair treatment from the 14th precinct officers also known as Patrol Borough Manhattan South (PBMS). Plaintiff was engaged in first amendment protected activity when assaulted by defendants for recording and holding a whiteboard sign while performing a one man protest. He was arrested for his speech and punished with a rough up including assault, battery, jail time and false charges. Defendants fabricated official report and filed false charges against Plaintiff who now brings this action for violation of his rights under federal constitution and state law.

**PARTIES**:

2. Plaintiff Emmanuel Obiagwu (hereinafter "Obiagwu" or "plaintiff") is a citizen of the state of New Jersey and the United States of America.

3. Defendant New York city (hereinafter "City" or "the city") is a municipal corporation organized and existing under and by virtue of the laws of the State of New York. At all times relevant hereto, Defendant City of New York acting through the New York City Police Department (NYPD) was responsible for the policies, practices, supervision, discipline, training, implementation and conduct of all NYPD matters and was responsible for the appointment of commissioner, retention and conduct of all NYPD personnel. In addition, at all times here relevant, defendant City of New York was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel follows the laws of the United States and the State of New York. Further, under the Charter of the City of New York, the City is responsible for the conduct of municipal agencies such as the New York City Police Department and Fire Department Of New York.

4. Defendant New York police department (hereinafter "NYPD") is a department within New York City acting under color of law. Tasked with the responsibility of upholding constitutional rights of the people and fighting crimes not committing them.

5. Defendant Atif Chohan (hereinafter "Chohan") is a sergeant officer of the NYPD with a violent history and over 12 allegations (that are known at this moment), complaints and history of

making false statements on his records while operating in NewYork city acting under color of law. He is sued in his individual capacity and official capacity.

6.  Defendant Kaisean Branche (hereinafter Branche) is a police officer of the NYPD operating in NewYork City acting under color of law. He is sued in his individual and official capacity.

7.  Defendant Amanda Ebrahim (hereinafter Ebrahim) is a police officer of the NYPD operating in NewYork city acting under color of law. HE is sued in his individual and official capacity.

8.  Defendant Andrew Yoli (hereinafter "Yoli") is an officer of the NYPD operating in NewYork City acting under color of law. He is sued in his individual capacity and official capacity.

9.  Defendant Mohammad Khan (hereinafter "khan") is a Lieutenant officer of the NYPD operating in NewYork City acting under color of law. He is sued in his individual capacity and official capacity.

10. Defendant Vadym Khalos is an officer of the NYPD operating in NewYork City acting under color of law. He is sued in his individual capacity and official capacity.

11. Defendant Garret Williams (hereinafter "Williams") is an officer of the NYPD operating in NewYork City acting under color of law. He is sued in his individual capacity and official capacity.

12. Defendant John Doe is an officer of the NYPD operating in NewYork City acting under color of law. He is sued in his individual capacity and official capacity. John Doe is believed to operate out of the NYPD 14th precinct/ PBMS.

## **JURISDICTION AND VENUE**

13. This court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332 and 1343

14. This Court has supplemental jurisdiction over the following state law claim pursuant to 28 U.S.C. §1367 in relation to the federal claims that it forms part of the same case under Article III of the U.S. Constitution.

15. This venue is proper in this District under 28 U.S.C. § 1391(b)(2). All of the events giving rise to this Complaint occurred within this District.

16. At all times relevant hereto, Defendants are citizens of the United States and resident of the State of NewYork and were acting under color of state law in their capacity as law enforcement officers employed by the City of New York.

## **FACTUAL BACKGROUND**.

17. On or about Feb 25th 2025 at 11:40 on 7th Ave between W46 and W47 street Officer Yoli accompanied by Lt.Khan made a traffic stop on an already stopped vehicle consisting of a black couple which Plaintiff Obiagwu believed was racially motivated so he began recording from the sidewalk.

18. Yoli asked the black couple questions that assumed they were in stolen vehicle as he aggressively ordered their family members to back away even though one of them had the document for the car and was trying to present the documents to the officers.

19. Obiagwu stayed at a safe distance as to not obstruct the traffic stop as he recorded, officer ebrahim immediately looked shocked and disgusted as she saw his camera recording.

20. Officer Yoli kept looking at Obiagwu for recording his active traffic stop.

21. Obiagwu after concluding in his opinion that nothing further of public interest is going on stopped recording and went back to his vending cart.

22. Immediately after heading back Obiagwu noticed that the five to six officers gathered in a hurdle and kept looking over their back at him in a way consistent with when a person is being talked about.

23. Ibrahim kept looking back at Obiagwu so he started recording again suspecting she was looking at him to retaliate.

24. After the officers found that the black couple pulled over were in fact not criminals and lawfully owned their vehicle they were allowed to leave.

25. Lt Khan and Ibrahim looked over at obiagwu over a dozen times as they talked among each other before ibrahim pointed at Obiagwu indicating to Khan that they should go approach him.

26. Officers Khan, ibrahim, Yoli and Chohan turned on their bodycam and began to approach Obiagwu and for obvious retaliatory reason and Ibrahim began to look overly excited to approach Obiagwu.

27. "Are you the owner of the speaker…. Unintelligible" Khan asks and Obiagwu responds by asking "what code" and immediately feeling like his authority had been challenged Khan ordered Yoli to take the speaker and demanded an ID.

28. Obiagwu in response to the demand of ID offers to spell and write his name down as for Obvious reasons no one is ever able to spell his African cultural name. "Im not giving you a pen or paper" says Khan as he refused to take out his notepad or ticketbook to take down Obiagwu's name and insisted on a physical "ID"

29. Khan asks Obiagwu if he had a physical ID and Obiagwu said no and Khan replied "okay" and he instructed Yoli to take down Obiagwu's name and what violation to ticket Obiagwu.

30. Khan accepted that Obiagwu had no physical ID by saying "okay" and continued the process of issuing a ticket by having Yoli write down Obiagwu's credentials by way of verbally stating his name and address but as soon as Obiagwu cursed at Khan telling him  to "shut the fuck up" khan responded by ordering Yoli to "take him in" for not having a physical ID in a very obvious retaliatory move for being cursed at. Obiagwu informed again that he is definitely going to give his name and that he did not refuse but khan restated that Yoli should "take him in" because "he has no [physical] id" simply because Obiagwu cursed at him.

31. While handcuffed ibrahim out of all six officers ( 5 of which are male) quickly rushed at the chance to be the one to physically hold on to Obiagwu and began rubbing and pinching his biceps to inflict pain before she shoved him against concrete wall for not consenting to the inappropriate touching.

32. Obiagwu was transported to the 14th precinct and jailed.

33.  Andrew yoli who was not included in the transport of Obiagwu or tasked with the responsibility went out of his way to come to the cell at a later time to begin questioning Obiagwu. Obiagwu refused to engage or answer any question so Yoli took away his McDonalds food provided by the cell watch guard to retaliate. "Since you won't answer my question you won't need this" said Yoli.

34. Yoli repeatedly came back to the cell approximately a dozen times to make sure Obiagwu does not rest or take a nap, keeping him awake in retaliation for not answering his questions.

35. Yoli banged on the metal cell doors with metal to prevent Obiagwu from resting or sleeping

36. Yoli refused to provide water or food after taking the one provided to Obiagwu in retaliation

37. Yoli threatened to make it miserable for Obiagwu if he doesn't start answering questions and complying.

38. Yoli repeatedly opened Obiagwu's cell to walk inside and physically hit him to wake him up when he ignored the banging on the metal gates.

39. Obiagwu asked to be given more clothing layers from his collected belongings as promised by the transport officers to combat cold temperature in metal cells but Yoli refused and used Obiagwu's request against him by threatening to not feed or give him more layers for not answering questions. Yoli then went as far as to physical drag and forcibly undressed Obiagwu's only layer of long sleeve shirt by pulling it off from his body as he resisted taking it off. Yoli left Obiagwu in his underwear tanktop to lay on cold iron bed as punishment for not

answering questions. Inmates in other cells had full winter jackets on and were given cigarettes to stay warm.

40. Obiagwu's detainment in the precinct's holding cell was unnecessarily prolonged and he was later transported to Manhattan Central Booking (MCB) without proper clothing attire in the freezing month of February with about 27* weather in retaliation for not answering questions.

41. NYPD headquarters refused on over 9 attempts to return plaintiff's money which was seized by Officer Yoli during arrest.

42. On or about November 3rd 2024 at approximately 9:30pm on 46th street and 7th Ave, Officer Williams along with group of officers approached Obiagwu and began giving orders for him to leave the sidewalk where he stood with no legal justification. Williams became agitated after Obiagwu refused to leave and began making threats against Obiagwu.

43. Williams had no problem with white people being on the sidewalk and approaching him and his co-officers, a group of white business owners can be seen standing shoulder-to-shoulder with the officers with no complaint from Williams.

44. Williams displayed discourteous behaviors towards Obiagwu in favor of the white business owners and in furtherance of this williams then goes as far as to tell Obiagwu not to come close when he wanted to make a complaint or "he would be on the ground" threatening that he would batter and tackle Obiagwu if Obiagwu came close to make a complaint while the white people were allowed to be shoulder to shoulder with him as they made their complaints.

45. Obiagwu stated to Williams that it is unlawful for him [williams] to use excessive force without justification and Williams affirmed that he will "one hundred percent" use force to put Obiagwu on the ground for video recording and approaching to make a complaint.

46. After Williams acted hostile and refused to take Obiagwu's complaint, Obiagwu approached the group of officers to attain their credentials, Obiagwu who was holding a cell phone and a book on the other hand approached four officers individually up close to take a photo of their badge numbers, the officers stopped and made their badge visible for Obiagwu to collect their

badge numbers one after the other and when Obiagwu got to Williams to get his badge number Williams intentionally struck Obiagwu directly at his chest for video recording.

47. 8 out of 9 officers who Obiagwu approached to attain their badge numbers remained calm and did not resort to force except for Williams who premeditated to batter Obiagwu and took the opportunity to retaliate for the video recording and protest of Obiagwu.

48. After being struck Obiagwu attempted to make another complaint this time for the harassment by Willimas and the officers refused to take his complaint or provide an incident number in an attempt to cover up the incident.

49. On or about the left side facing south of 7th ave between W47 and W46 street is a parking lane, although NYPD doesn't allow private vehicles to park longer than it takes to discharge or pickup up passengers, it is nonetheless accessible by foot similar to any other parking lane due to the fact that it is a shoulder lane and not an active driving lane, therefore if a vehicle was parked on this shoulder it potential could result in a ticket due to place and time restrictions but not for impending traffic as such vehicle would not be impeding traffic in any way parked against the curb. The Patrol Borough Manhattan South (PBMS) personnel of NYPD commonly park their vehicle(s) in this area.)

50. On the night of May 3, 2024 Obiagwu was issued a ticket for vending on 7th Avenue and 46th street.

51. Sgt Chohan confiscated Obiagwu's property in retaliation for "talking back" without providing a voucher and claimed he doesn't have to.

52. Obiagwu followed Chohan, Ebrahim and Branche onto the shoulder lane of the street where an NYPD marked car was parked. Obiagwu followed them closely to document proof of his property being taken and to request a voucher receipt.

53. Ebrahim and Chohan entered into the marked car at 9:02pm and Obiagwu followed them and moved around the marked car to get a clear photo of their badge numbers by briefly stepping in front of the INACTIVE TURNED OFF police vehicle to get its license plate then walking around the car to the back of the car and then to the side following behind Branche who

walked to the passenger side to briefly speak with Chohan as Obiagwu waited a couple steps behind until Branche was done and turned back around. Chohan and Ebrahim had NO PROBLEM with Obiagwu standing on the parking lane recording them as they sat in the car.

54. Branche began walking to a secondary vehicle with Obiagwu's belongings as Obiagwu followed him behind trying to get a voucher receipt while walking on park lane until reaching the NYPD van. Obiagwu and Branche had an argument about the ability to retrieve his belongings from the police command if no receipt is provided while standing on the parking lane. Obiagwu was not arrested or told to get off the parking lane at this point (9:05Pm)

55. Obiagwu feeling racially targeted and unfairly treated by the harassment and seizure of his belongings left the scene without further incident.

56. Over an hour and a half later at or about 10:25 Pm Obiagwu returned with a white board sign to single-handedly protest the seizure of his belongings considering other white vendors' belongings weren't taken from them.

57. Obiagwu returned back to Protest by 47st and 7th where he saw officer ebrahim flirting with a group of minor boys exchanging compliments as they hit on her and potentially exchanged phone numbers. Obiagwu held his protest sign and interacted with tourists regarding his activism and within minutes a group of young teens stopped by to inquire the cause of the protest and upon hearing Obiagwu's story they began mocking Chohan and video recording him as Chohan waved his hands telling them to go away for recording him.

58. Chohan's EGO was hurt and he appeared to be holding back tears with glassy eyes and shaky lips as he was being mocked by the teenagers. Female officer ebrahim approached and came to Chohan's defense and Chohan embarrassed in the presence of ebrahim made an attempt to make a joke of Obiagwu but NO ONE laughed at his joke….. but him, so he began walking to his car to get away from being laughed at by the group of teens who by the way have no affiliation with Obiagwu.

59. While walking back to his vehicle to sit and possibly cry (Note that Chohan was NOT responding to any call to duty, police activity or emergency) Chohan walked by approximately 7 white girls who were BLOCKING both the ACTIVE bike lane and inactive Parking lane while taking selfies and making TikToks and Chohan did not order them away or say anything regarding the obstruction of active bike lane in a busy area. Chohan also saw and walked past asian and white photographers taking photos with their clients on the parking lane and said nothing ignoring them. Chohan also saw a non-NYPD civilian vehicle parked on the parking lane and did nothing. Chohan also saw a White couple standing on the parking lane and did nothing. Other officers including Ebrahim, Islam and additional officers all witnessed it all but nobody was ordered to get off the parking lane or bike lane at all. Obiagwu lifted up his protest sign to make it more visible to the crowd and facing it at Chohan who visibly got more furious.

60. Obiagwu asked Chohan if he was going to the car to hide and cry and immediately as a direct response to accusation of "going to hide and cry" Chohan quickly turned around looking sad and ordered Obiagwu to get off the parking lane in which Obiagwu responded and told him to "shut the fuck up" and immediately after those words Chohan charged at Obiagwu grabbing his hands and placed him under arrest. This arrest comes 2 months after Obiagwu was arrested for telling a Lieutenant Khan to "Shut the fuck up" in the presence of Chohan at the exact same literal location.

61. (Note: there was and have been a barricade setup to close the parking lane at the 47st and 7th ave intersection since the construction of "Tempo" hotel. This parking lane has been used by tourists for walking and taking photos for years. There have also been an NYPD van parked horizontally behind the barricade to completely shut the parking lane since the construction of Tempo and pre-Covid.)

62. While Obiagwu was being placed into the patrol vehicle Officer ebrahim inappropriately and in a unwanted romantic way began very touchy with Obiagwu wrapping and interlocking her hands with that of Obiagwu which he previously did to him on a previous arrest where she kept rubbing his biceps and pinching him in a flirty way. With over 4 male officers present ebrahim jumped at the opportunity with excitement to be the one to hold onto Obiagwu. Obiagwu responded saying he doesn't want to be touched like that by her and she responded by saying Obiagwu was "ugly as Shit" or "ugly as fuck"

63. Upon arriving at the precinct it began to pour rain heavily so Chohan found an opportunity to bully Obiagwu by physical assaulting and forcing him to stand still outside in the middle of heavy rain for no reason. As Obiagwu who was handcuffed and physically held tried to head into the police station Chohan grabbed him back aggressively to keep him in the rain as he humiliated Obiagwu on the street for all to see. Chohan got highly aggressive with a defenseless Obiagwu charging at him and pushing him into a parked vehicle as Branche and other officers stood outside the precinct and watched doing nothing.

64. Inside the command at the front of the desk Obiagwu who was still physically held and restrained turned his head simply to look at Chohan and Chohan attacked and slammed him into the desk grabbing Obiagwu's head and forcibly twisting his neck and head to face away from him as he was disgusted with Obiagwu and didn't want to be looked at. Obiagwu made no attempt to take flight or showed aggression, simply looked back at Chohan and was assaulted by over 3 officers and slammed with one officer performing a military style restraint technique used on high level felons such as MS13 killers and rapists. Obiagwu informed them that he has an injury on his shoulder, he isn't trying to escape and that there are many less intrusive way of restraining him but the officers refused to apply other less painful way of restraining him and continued to twist and apply force to his injury as he showed clear pain and mentioned his injuries numerous times.

65. Obiagwu even requested that the same restraining technique can be done to his opposite shoulder which doesn't hurt but the officers refused and intentionally continued to apply force to inflict pain. Obiagwu requested medical attention and was refused as they continued to twist his injuries

66. Chohan and Branche fabricated and manipulated facts on official arrest report allegeding Obiagwu "recklessly created a risk and obstructed vehicular and pedestrian traffic" When they knew that the parking lane was closed and does not impact traffic.

67. Obiagwu was starved without food or water throughout his detainment

68. Obiagwu made a complaint against Yoli and Chohan to the CCRB who later transferred the complaint back to the NYPD to investigate itself and conveniently Chohan who is a field officer and not a detective or investigator was tasked with investigating himself and his direct subordinates. Chohan manipulated the NYPD's unregulated complaint system to dismiss complaints against himself by making attempt to contact Obiagwu at NIGHT hours knowing Obiagwu would be working and unable to conduct an interview after normal 9-5 hours.

## CLAIMS FOR RELIEF
### 1st claim
### **42 U.S.C. § 1983 - First Amendment Violations of Free Speech and Assembly.**
(Against NYPD, NYPD officers in their individual & official capacity and City.

69. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

70. Defendants Khan, ebrahim, Chohan and Yoli violated Obiagwu's freedom of speech and punished him for it.

71. Defendants Khan, ebrahim, Chohan and Yoli violated Obiagwu's freedom to express himself through music and punished him for it when they initially did not have a problem with his music until he recorded their traffic stop.

72. Defendants Khan, ebrahim, Chohan and Yoli violated Obiagwu's freedom of press to record in public and to document police activity by retaliating when they initially did not have a problem with his music until he recorded their traffic stop.

73. Defendants Chohan, Branche and ebrahim action to write plaintiff a ticket but not other vendors allegedly breaking city codes was clear sign of retaliation for redressing his grievances

74. Defendants Chohan, Branche and ebrahim action to seize Plaintiff's property in response to redressing his grievances shows clear sign of retaliation.

75. NYPD defendants Chohan and ebrahim action to order plaintiff away but not other civilians on the parking lane shows clear violation of freedom to protest

76. NYPD Defendants Chohan and Ibrahim action on Obiagwu in response to not leaving the area due to his sign constitutes violation of right to redress his grievances with a government body.

77. Defendant William violated Obiagwu's first amendment right to protest and redress his grievances by threatening and assaulting him.

78. Defendant William violated Obiagwu's first amendment right to protest and redress his grievances by battering him.

79. As a direct result of the conduct of Defendants described herein, Obiagwu suffered damages including: physical injury, emotional trauma, great concern for his own safety; fear, apprehension, depression, anxiety, consternation and emotional distress.

80. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.


### 2nd Claim

### 42 U.S.C. § 1983 Retaliatory Arrest in violation of the First Amendment
(Against City, NYPD and its officers in their individual and official capacity)

81. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

82. Defendant Khan ordered the arrest of Obiagwu in retaliation for his choice of words towards him which is covered by the first amendment.

83. Defendant Khan made the decision to handcuff, make a full arrest and forced Obiagwu to jail in retaliation of his speech as opposed to a less invasive option after Obiagwu engaged in constitutionally protected voicing of speech and did not refuse to identify.

84. Defendant Chohan made the decision to handcuff, make a full arrest and forced Obiagwu to jail in retaliation of his speech as opposed to a less invasive option after Obiagwu engaged in constitutionally protected voicing of speech.

85. Defendants  Khan, ebrahim, Chohan and Yoli action to arrest Plaintiff for speech will chill a person of ordinary firmness from continuing to engage in protected activity.

86. Defendants Chohan, ebrahim and Branche's  action to arrest Plaintiff for video recording will chill a person of ordinary firmness from continuing to engage in protected activity.

87. Defendants in both arrests falsified official report and charged Obiagwu with meritless accusations to meet the requirements needed to take him to central booking for over 30hours as opposed to a ticket in furtherance of retaliation.

88. Additionally, Defendants' actions described herein have had a chilling effect on Obiagwu, who is now less likely to protest injustice or speak freely on police activity out of fear of further unconstitutional treatment.

89. As a direct result of the conduct of Defendants described herein, Obiagwu suffered damages including: physical injury, emotional trauma, great concern for his own safety; fear, apprehension, depression, anxiety, consternation and emotional distress.

90. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**3rd Claim**

## **42 U.S.C. § 1983 - Fourth Amendment Violations Involving Unlawful Seizure and arrest.**
### (Against City, NYPD and its officers in their individual and official capacity)

91. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

92. Emmanuel Obiagwu was vested with, possessed, and was guaranteed by the Fourth Amendment of the United States Constitution the right to be free from an unlawful search and seizure.

93. Defendants Khan, ebrahim, Chohan and Yoli unreasonably seized Obiagwu, thereby depriving him of his right to be free from unreasonable seizure of his person in violation of the Fourth and Fourteenth amendments to the United States Constitution.

94. Defendants ebrahim, Chohan and Branche unreasonably seized Obiagwu, thereby depriving him of his right to be free from unreasonable seizure of his person in violation of the Fourth and Fourteenth amendments to the United States Constitution.

95. As a direct result of the conduct of Defendants described herein, Obiagwu suffered damages including: physical injury, emotional trauma, great concern for his own safety; fear, apprehension, depression, anxiety, consternation and emotional distress.

96. Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

### **4th Claim**
### **42 U.S.C. § 1983 - Fourth Amendment Violations involving Excessive Force**
### (Against City, NYPD and its officers in their individual and official capacity)

97. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

98. Emmanuel Obiagwu was vested with, possessed, and was guaranteed by the Fourth Amendment of the United States Constitution the right to be free from an unlawful search and seizure.

99. Defendants Khan, ebrahim, Chohan and Yoli unlawfully handcuffed and arrested plaintiff with no probable cause

100.    Defendants ebrahim, Chohan and Branche unlawfully handcuffed and arrested plaintiff with no probable cause

101.    The use of force against Obiagwu in the precinct  by inflicting harm through physical force on Obiagwu's injuries in order to show authority was objectively unreasonable under any circumstances.

102.    Plaintiff at no time was impeding traffic or acting recklessly contrary to Defendant Branche's sworn statement making the unlawful use of force illegal and in violation of the fourth amendment.

103.    Defendants used unnecessary and excessive force to combat Plaintiff's attempt to avoid getting soaked in the rain while he was already fully subdued and in the presence of 5 male officers.

104.    Defendant Chohan and John Doe used unnecessary and excessive force to combat Plaintiff turning his head to look away from the desk sergeant to glance at Chohan. He posed no threat or signs of flight making the response from defendants excessive and unlawful.

105.    Defendant Williams used excessive force against Plaintiff to prevent him from taking a photo of his badge number by threatening and making Plaintiff fear for his safety.

106.    Defendant Williams used excessive force against Plaintiff to prevent him from taking a photo of his badge number by striking him in his chest.

107.    As a direct result of the conduct of Defendants described herein, Obiagwu suffered damages including: physical injury, emotional trauma, great concern for his own safety; fear, apprehension, depression, anxiety, consternation and emotional distress.

108.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

## 4B

## Graham V. Connor 490 U.S. 386 (1989)

109.    United States of appeals ruled that in order to make a claim of excessive force the facts are analyzed by "objective reasonable standards" factors which includes; severity of the crime at hand, possible threats posed by the suspect to the safety of others including the officers, resisting arrest or attempting to evade arrest. By these United States standards the Defendants are guilty of excessive force.

## 5th Claim

## Monell v. Dept. of social services of city of New York 436 U.S 658 (1978) violations of constitutional rights.
## (Against City and NYPD)

110.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

111.    Defendant City, as a matter of policy and show of practice, has with deliberate indifference failed to properly sanction or discipline police officers including the defendants in this case such as Chohan, for violations of the constitutional rights of citizens, thereby causing police officers including defendants in this case, to engage in unlawful conduct.

112.    Defendant NYPD had policies that violate the first amendment stopping the filming of government property and activity that are of public interest.

113.    Defendants have a policy of arresting people who challenge officers' suspicion or unlawful orders

114.    Defendants NYPD and City allows its officers to refuse food and water to inmates because they're "not the arresting officer" of said inmate.

115.    Defendants pack of action against officers who commit perjury or falsify reports

116.    Defendants NYPD and City allows its officers to remove layers of clothing from select inmates needed to stay safe and warm in the winter season as a form of retaliation for "not complying"

### **6th Claim**
### **42 U.S.C. § 1983 - Fourth Amendment Violations;  failure to intervene**
#### (Against City, NYPD and its officers in their individual and official capacity)

117.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

118.    NYPD have a responsibility to intervene and de-escalate excessive and illegal actions committed within the department or among eachother

119.    Over 4 officers including Branche watched Chohan abuse and assault Plaintiff but stood in the shade and did not intervene to reduce the force being used

120.    Seargent Hudges witnessed Chohan and John Doe assault Plaintiff at the desk and did not intervene even after plaintiff looked directly at him and begged to tell his officers to calm down because he wasn't resisting or attempting to flee.

121.    Sergeant Park was aware Plaintiff was being starved and did nothing to change or report it.

122.    Khalos was aware plaintiff was starved by the order of Hudges and did nothing to change or report it.

123.    NYPD officers refused to intervene after Williams struck plaintiff in the chest.

124.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

## 7th Claim
### Fifth Amendment right: Right to not incriminate oneself.
### (Against City, NYPD and Branche in his individual and official capacity)

125.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

126.    Defendant Branche continued to ask questions after Obiagwu invoked his right to remain silent.

127.    Defendant Branche continued to interrogate Plaintiff after he asserted his right to have his lawyer present for questioning

128.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

## 8th Claim
### Fifth Amendment Violations- involving retaliation

(Against City, NYPD, Branche and Yoli in their individual and official capacity)

129.   Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

130.   Defendant Yoli punished plaintiff for not answering his questions after he explicitly asserted his right to remain silent by seizing the food and water provided to Plaintiff

131.   Defendant Yoli punished plaintiff for not answering his questions after he explicitly asserted his right to remain silent by not getting him food and water.

132.   Defendant Branche punished Plaintiff for not answering his questions after he explicitly asserted his right to remain silent by not getting him food.

133.   Defendant Branche punished Plaintiff for not answering his questions after he explicitly asserted his right to remain silent by charging plaintiff with possession of a knife he [Branche] found on the street.

134.   Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.


**9th Claim**
**42 U.S.C. § 1983-Conspiracy to Deprive Civil Rights**
(Against City, NYPD and its officers in their individual and official capacity)

135.   Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

136.   Defendants, acting in their individual capacities and under color of law, conspired together and with each other, and reached a mutual understanding to undertake a course of conduct that violated Obiagwu's civil rights.

137.    In furtherance of this conspiracy, Defendants committed overt acts, namely:

a.  While acting in concert placed Obiagwu into handcuffs, transported him to the police department, assaulted him outside the precinct then jointly assaulted him again for simply looking away from the desk sergeant.

b.  Defendants were acting in concert when they all agreed not to provide food or water to Obiagwu through his time in jail.

c.  Multiple officers at the precinct's holding call confirmed they cant provide food or water to Plaintiff until the desk sergeant approve which never was approved.

d.  Plaintiff was placed in an holding cell with no working sink with no running water.

e.  Sergeant Park admitted that it is an unlawful arrest but won't release Plaintiff even though he knows it was "bad arrest" and "will get dismissed"

f.  Sergeant Park refused to provide food and water to plaintiff.

138.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.


**10th Claim**

**42 U.S.C. § 1983 - Fourteenth Amendment Violations of Due Process and equal protection**

**(Against City, NYPD and its officers in their individual and official capacity)**


139.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

140.   Plaintiff was not provided equal protection of the law due to his race.

141.   Plaintiff was singled out and discriminated against due to the color of his skin while others of different race were ignored for committing the same alleged violations.

142.   Plaintiff was deprived of his property and freedom without due process while others of different race were ignored for committing the same alleged violations.

143.   Plaintiff was governed by rules and orders not enforced on others of different race and ethnicity such as "playing music without permit"

144.   Defendants acted with malice towards Plaintiff to satisfy personal grudges denying him with due process under the law

145.   Defendants refused to take action on people of different race pointed out by Plaintiff to show discrimination.

146.   Defendant City continued to maliciously prosecute Plaintiff for secondary charges while aware the initial charge had no probable cause.

147.   Defendant Williams did not provide equal rights to plaintiff which he provided to people of other race.

148.   As a direct result of the conduct of Defendants described herein, Obiagwu suffered damages including: emotional trauma, great concern for his own safety; fear, apprehension, depression, anxiety, consternation and emotional distress.

149.   Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**11th Claim**

## Eight Amendment violation:Cruel &unsuual punishment

(Against City, NYPD and its officers in their individual and official capacity)

150.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

151.    Plaintiff was forced to stay longer in the rain by defendant Chohan as punishment for "being disrespectful"

152.    Plaintiff was stripped of all layers of clothing except underwear by defendant Yoli to punish him in the cold metal cell, a punishment not given to other images.

153.    Plaintiff was forced to go into the freezing weather and released from jail without proper winter clothing.

154.    Plaintiff was denied food and water on both arrests as punishment for not answering further questions. Branche refused to provide food and water because plaintiff did not want to answer questions. Yoli refused to provide food and water because plaintiff did not want to answer questions.

155.    Chohan and John doe slammed Plaintiff against an inanimate object causing pain and then tortured him by twisting and knowingly applying force directly to his injury to gain control over him,

156.    Plaintiff was placed in a holding cell with dried human feces and blood  all over the toilet and walls.

157.    Plaintiff was placed in a cell with dried human liquid waste including saliva and urine on the bench and floors.

158.    Plaintiff was placed in a cell with a facet that had no running water.

159.    Plaintiff who is diagnosed with asthma was forced and placed in a cell block with no windows or proper ventilation and forced to second hand smoke over a dozen times and when asked to go to hospital he was refused.

160.    Defendants had over 20 holding cells available but made no effort to clean and humanize the conditions to meet New york law standards or department policy.

161.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**12th Claim**

**42 U.S.C. § 1983 - Supervisory Liability**

(Against City, NYPD, Khan, Chohan, Hudges, Park)

162.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

163.    The 14th precinct / PBMS supervisors including LT Matthew Hudges, SGT Park, SGT Chohan, LT Khan were aware of the incident and failed to act as they were informed and reviewed BWC but continued to imprison plaintiff unlawfully.

164.    Supervisors' failure to instruct and train subordinates on use of force and abuse of authority.

165.    The supervisors knew that plaintiff hadn't been fed food or water but refused to do anything about it. Sgt Park became aware after speaking to Plaintiff and refused to provide food and water.

166.    Failure to train officers on respecting civil rights and avoiding retaliations

167.    NYPD has a custom, policy, or practice of violating the 8th Amendment by regularly leaving the duty to provide food and water to inmates at the hands of their arresting officers who often aren't available after an arrest.

168.    The supervisor subordinates' failure to correct each other shows lack of leadership further violating plaintiff's rights.

169.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.


**13th Claim**
**42 U.S.C. § 1983: Municipal Liability**
(Against City)

170.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

171.    Defendant City is liable to Plaintiff pursuant to 42 U.S.C. § 1983 for the remaining Defendants' violation of Obiagwu's rights because the violations were caused by a policy, practice, or custom of the New York city Police Department. Among the NYPD policies, practices, or customs that caused constitutional harm to Obiagwu are the following:

172.    The rule "No recording allowed inside police property/station" which have made officers believe citizens do not have a right to document government property or activity caused the entire incident with Obiagwu. This city wide policy has now been repealed in court in Sean Reyes V. NYPD but continues to be enforced.

173.    NYPD has a custom, policy, or practice of violating the Fourth Amendment by regularly charging people with "disorderly conduct" as a broad net to arrest anyone who challenges their authority and resist unlawful orders.

174.   NYPD has a custom, policy, or practice of violating the Fourth Amendment by regularly falsely arresting people to discover possible contraband.

175.   NYPD has a custom of not feeding inmates because "the arresting officer has gone home"

176.   Defendants City and NYPD have failed in disciplining and terminating officers such as defendant Chohan who acquired numerous complaints and accusations of violence, excessive force and other civil rights violations.

177.   Additionally, NYPD has a custom, policy, or practice of violating the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause.

178.   The City's policies, procedures, customs, and practices encourage its officers to falsify evidence and commit perjury.

179.   **Ariza v. City of New York, 93-CV-5287 (CPS), 1996 U.S. Dist. LEXIS 20250 at*14 (E.D.N.Y.):** the Eastern District Court held that the police officer had established proof of a policy to retaliate against police officers who expose police misconduct and a failure to train in the police department

180.   **People v. Pogan, 06416-2008 (Sup. Ct., N.Y. Co.):** Nypd officer intentionally swore a false complaint and got convicted for forging police records.

181.   On October 9, 2013, Civilian Complaint Review Board Deputy Executive Director Marcos Soler wrote to the Board Members of the CCRB that from January-August 2013, the NYPD declined to prosecute 29% of all substantiated CCRB cases against its officers.

182.   As a direct result of the Defendant City's failures and policies as described herein, Obiagwu suffered damages including: physical injury, emotional trauma, great concern for his own

safety; fear, apprehension, depression, anxiety, consternation and emotional distress; lost time; loss of employment opportunity; and loss of faith in society., including mental anguish, physical harm, pain, and suffering.

## 14th Claim
## 42 U.S.C. § 1983: Malicious prosecution.
### (Against City)

183.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

184.    Defendants misrepresented and falsified evidence before the District Attorney.

185.    Defendants did not make a complete and full statement of facts to the District Attorney.

186.    Defendants lacked probable cause to initiate criminal proceedings against plaintiff.

187.    Defendant Yoli and Branche on both arrests  lied and swore about the legality of pocket knife to initiate and strengthen criminal proceedings against plaintiff.

188.    As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, and he was put in fear for his safety, was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

189.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

## 15th Claim
## NY State law: intentional use of force.
### (Against City, NYPD and its officers in their individual and official capacity)

190.    Plaintiff incorporates by reference each and every allegation contained in the

preceding paragraphs as if fully set forth herein.

191.   Defendants committed acts that rose to the level of extreme or outrageous conduct that goes beyond the possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community.

192.   Defendants ebrahim and Chohan actions were intentionally reckless and did whatever they felt they wanted to prevent Obiagwu from protesting and redressing his grievances.

193.   John Doe used intentional use of force to afflict pain on Obiagwu injuries when he knew it was unnecessary

194.   Such actions by Defendants have caused Mr. Obiagwu emotional distress.

195.   Defendants' sole motivation was to cause emotional distress to Plaintiff in retaliation for disregarding his unlawful orders and saying mean things

196.   As a direct result of the conduct of Defendants described herein, Mr. Obiagwu suffered damages including: emotional trauma, great concern for his own safety; fear, apprehension, depression, anxiety, consternation and emotional distress. In addition; loss of employment opportunity; and loss of faith in society.

197.   Further, Mr. Obiagwu was reasonably in fear for his own person because of the actions of Defendants

198.   Defendants had information that plaintiff was injured when they proceeded to twist his injury

199.   Defendant Williams intentionally used force against Plaintiff

200.   Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**16th Claim**

**NY state law: Assault and battery.**

(Against City, NYPD and its officers in their individual and official capacity)

201.  Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

202.  During the process of being unconstitutionally arrested, Obiagwu suffered assault and battery at the hands of Defendants.

203.  Defendant Chohan repeatedly did assault and battered Obiagwu by shoving, pushing and slamming him against a car and a desk.

204.  Defendant Chohan and John Doe did assault and battered Obiagwu when they twisted his arm he informed was injured in order to force him to face the desk.

205.  Defendant Chohan committed battery when he roughed up plaintiff for trying to get out of the heavy rain

206.  Defendant Williams assaulted plaintiff by making him fear for bodily harm and his safety

207.  Defendant Williams battered plaintiff by striking his chest aggressively.

208.  Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**17th Claim**

**NY state law: Tampering with evidence with intent.**

(Against City, NYPD and Branche in his individual and official capacity)

209.  Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

210.    Defendant Branche tampered with evidence when he picked up random object he found on the ground and added it as evidence against Plaintiff.

211.    Defendant Chohan, Brachie and Yoli all fabricated police report they knew would be used as evidence for the prosecution of plaintiff

212.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.


**18th Claim**

**NY law: Obstruction of Justice**

**(Against City, NYPD and its officers in their individual and official capacity)**

213.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

214.    Defendant Branche obstructed justice when he picked up random object he found on the ground and added it as evidence against Plaintiff.

215.    Defendant Chohan, Brachie and Yoli all fabricated police report they knew would be used as evidence for the prosecution of plaintiff

216.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.


**19th Claim**

**NY law: conversion**

**(Against City, NYPD and its officers in their individual and official capacity)**

217.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

218.    Mr.Obiagwu's pepper spray was seized by NYPD officers during his wrongful and unconstitutional arrest.

219.    Obiagwu was the owner of the pepper spray.

220.    Defendants took possession of the property without Mr.Obiagwu's permission.

221.    Defendants deprived him of the right of possession.

222.    Defendant deprived him of the 2nd amendment right to defend himself

223.    Obiagwu have made demand on Defendants to return the knife with no success

224.    Defendant Yoli intentionally miscategorized plaintiff's cell phones and other belongings as evidence to prevent giving it back to him.

225.    NYPD police Headquarters refused to release $190 belonging to Obiagwu after over 9 attempts.

226.    Obiagwu was injured as a result of these actions in the form of actual damages for the purchase value of the pepper spray, as well as for the loss of use of the pepper spray and $190.

227.    Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

**$20th Claim**

**NY law; discrimination**

**(Against City, NYPD and its officers in their individual and official capacity)**

228.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

229.   There's no doubt that the main reason Chohan acted with such hate and aggressiveness towards plaintiff was greatly due to his race. This is clear when he refused to take the same actions against people of other race for conducting the same alleged violations

230.   Defendants did not issue tickets to other vendors who were white or Asian.

231.   Willams treated Obiagwu differently than he treated those of other race or ethics

232.   Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

### 21st Claim

### NY law; false imprisonment and false arrest

(Against City, NYPD and its officers in their individual and official capacity)

233.   Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein

234.   Plaintiff was detained and by show of authority arrested when he engaged in protected activity

235.   Plaintiff was arrested for cursing at Chohan which is protected speech

236.   Plaintiff was arrested for cursing at Khan which is protected speech

237.   Defendants, at all times relevant hereto, were acting under the color of state law in their capacities as officers for the City of NY and their acts or omissions were conducted within the scope of their official duties or employment.

### PRAYER FOR RELIEF

1.Judgment for compensatory damages; including damages for emotional distress, humiliation, loss of enjoyment of life and other pain and suffering on all claims allowed by law in an amount to be determine by a jury not less $1,800,000

B. economic losses on all claims allowed by law;

C. special damages in an amount to be determined at trial;

D. punitive damages on all claims allowed by law against all individual Defendants;

F. pre- and post-judgment interest at the lawful rate; and,

2. Judgment for exemplary or punitive damages not less than $3,600,000

3. Cost of suit; attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

4. Monetary rewards for missed work opportunity

5. Any further relief that this court deems just and proper, and any other appropriate relief allowed by law and equity.

6. Wherefore Plaintiff prays for judgment against all defendants for their respective role.

7. Plaintiffs prays that this court impanel a lawful jury to hear this case.

## **PUNITIVE DAMAGE**

The actions of Defendants as described above were carried out in bad faith and with malice, and done with intent to cause injury. Punitive damages should be awarded to punish Defendants and to deter them, as well as other similarly-situated individuals, from engaging in similar conduct in the future, in an amount to be determined by a jury.

Submitted by;

/s/ Emmanuel Obiagwu.
908-708-4090
EmmanuelObiagwu@gmail.com

_____

September, 13, 2025